UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHA F. MATHIS,

        Plaintiff,                          Case Number 17-10361
                                                            Honorable David M. Lawson
v.                                                          Magistrate Judge Elizabeth A. Stafford

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**<u>OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING THE FINDINGS OF THE COMMISSIONER, AND DISMISSING COMPLAINT</u>**

The plaintiff filed the present action on February 3, 2017 seeking review of the Commissioner's decision denying her claims for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act. The case was referred to United States Magistrate Judge Elizabeth A. Stafford under 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and remand the case for further consideration by the administrative law judge. The defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner. Magistrate Judge Stafford filed a report on January 25, 2018 recommending that the defendant's motion for summary judgment be granted, the plaintiff's motion for summary judgment be denied, and the decision of the Commissioner be affirmed. The plaintiff filed timely objections, and the defendant filed an empty response. The matter is now before the Court.

Marsha Mathis was 58 years old when she applied for disability benefits and supplemental security income. She alleged that she was not able to work after February 18, 2014, because she suffered from diabetes, poor vision, high blood pressure, knee pain, and involuntary weight loss. Previously, she had worked for 21 years as a fast food restaurant cashier and food preparation worker, and after that for a short time as a daycare provider. Her disability onset date corresponded roughly with a hospital admission when she suffered an acute attack of diabetic ketoacidosis and renal failure. Her kidney problem resolved and her diabetes is well controlled. She testified that she cannot work because of severe pain in her legs and knees, which is aggravated by lifting heavy things. Her tailbone hurts when she sits for more than an hour. She also testified that she has blurry vision without glasses, but her vision is "good" with her correction.

The plaintiff's applications for disability benefits and supplemental security income were denied initially on June 27, 2014. The plaintiff timely filed a request for an administrative hearing, and on August 20, 2015, the plaintiff appeared before Administrative Law Judge (ALJ) Lawrence E. Blatnik. On November 25, 2015, ALJ Blatnik issued a written decision in which he found that the plaintiff was not disabled. On December 13, 2016, the Appeals Council denied the plaintiff's request for review of the ALJ's decision. The plaintiff filed her complaint seeking judicial review on February 3, 2017.

ALJ Blatnik reached his conclusion that the plaintiff was not disabled by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. §§ 404.1520(a) and 416.920(a). He found that the plaintiff had not engaged in substantial gainful activity since February 18, 2014 (step one); and the plaintiff suffered from diabetes mellitus, essential hypertension, and osteoarthritis of both knees, impairments which were "severe" within the meaning of the Social Security Act (step

two). The ALJ considered the hospital diagnoses of pancreatitis and renal failure made during the plaintiff's one-week hospitalization in February 2014, but because those resolved by the time of her discharge, he did not consider those impairments "severe." He did not find her vision problem to be severe, because there was no indication in the record that she sought treatment. The ALJ also believed that the plaintiff had not complained to her doctors about blurred vision, but apparently he overlooked a doctor visit in December 2013, one in March 2014, and another in October 2014 where the plaintiff discussed blurred vision with her medical providers. The ALJ also determined that the plaintiff's involuntary weight loss was not a severe impairment; although her weight fluctuated from 137 pounds in 2013 to 126 pounds in March 2014, he found that her weight had stabilized at the 130-132 pound range, and she testified that she stood five feet, six inches in height.

The ALJ found that none of those severe impairments alone or in combination met or equaled a listing in the regulations (step three). The ALJ then found that the plaintiff had the residual functional capacity (RFC) to perform a range of light work, which included lifting, carrying, pushing, or pulling 20 pounds occasionally and 10 pounds frequently; and sitting, standing, or walking at least six hours of an eight-hour work day; but limited to occasionally climbing ramps and stairs; and never climbing ladders or scaffolds. Based on that RFC, the ALJ found that the plaintiff could perform the duties required for her past relevant work as a fast food restaurant cashier, which was unskilled and required light exertion (step four). Based on those findings, the ALJ did not proceed to the fifth step, and concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

In her motion for summary judgment, the plaintiff argued that the ALJ erred when he failed to consider her non-severe vision impairment when determining her RFC. She argued, correctly,

that the ALJ is obliged to consider both severe *and* non-severe impairments when assessing the plaintiff's ability to work. *See* Social Security Ruling (SSR) 96-8p. And she noted that the Dictionary of Occupational Titles (DOT) listed frequent to good near-vision acuity as one of the requirements of the jobs mentioned by the vocational expert. The magistrate judge suggested, however, that the ALJ actually considered — and rejected — the plaintiff's alleged vision impairment when he discounted the impairment as non-severe. *See* Tr. 15.

The plaintiff also argued that the ALJ "grossly overestimated" her RFC because he did not evaluate her credibility properly. The magistrate judge suggested that the ALJ properly considered the record evidence and was well within his purview when he found the plaintiff's description of her disability only partially credible.

Finally, the plaintiff argued that the ALJ failed to make specific findings to support his determination that the plaintiff could return to her past work as a fast food restaurant cashier. The magistrate judge suggested, however, that the ALJ's specific findings can be seen in his determination of the plaintiff's RFC, including the explanation for rejecting the opinion of Dr. Lee Koski from Michigan Rehabilitation Services, the credit he gave to the VE's testimony, and his observation that the reduction in available jobs that might be caused by the plaintiff's need to sit every 20 to 30 minutes still left enough available jobs to amount to significant numbers.

As noted, the plaintiff filed timely objections to the report and recommendation. The attorney for the Commissioner filed a response to the objections that adds nothing: he did not present any argument, he did not cite any authority, he did not make any reference to the record. The filing of timely objections to a report and recommendation requires the court to "make a de novo determination of those portions of the report or specified findings or recommendations to which

objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the administrative record in light of the parties' submissions.

## First Objection

In her first objection, the plaintiff contends that the magistrate judge should have found that the ALJ gave insufficient consideration to the plaintiff's impaired vision in determining her RFC. The plaintiff asserts that her impaired vision precludes her from performing past relevant work because she cannot see well for eight hours a day, five days a week. The plaintiff argues that the ALJ's written decision lacks an adequate explanation as to why the plaintiff's impaired vision was

not factored into his finding that the plaintiff was capable of performing the duties of a fast food restaurant cashier.

The attorney for the Commissioner asserted in his summary judgment brief that the plaintiff's argument about her impaired vision is "misguided" and "legally irrelevant," because the ALJ determined that other impairments were severe. He cited *Anthony v. Astrue*, 266 F. App'x 451 (6th Cir. 2008), in support. That response talks past the plaintiff's contention, however, and suggests that the Commissioner misread the plaintiff's brief. The *Anthony* court held that the failure of the ALJ to find an impairment severe, and thus proceed beyond step two of the sequential analysis, was harmless when other impairments found severe allowed the plaintiff to clear that hurdle. And in that case, the ALJ actually considered the non-severe impairments in the subsequent steps. *Id.* at 457. In this case, the plaintiff does not challenge the finding that her vision impairment was non-severe; she contends instead that the ALJ did not take that non-severe finding into account when establishing her RFC.

It is understood that when "assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (1996). The reason, explained the Commissioner, is that although "a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim." *Ibid.*

The defendant asserted in his summary judgment brief that the ALJ "explicitly and repeatedly addressed" the vision impairment, referring to pages 15 and 16 of the administrative record. But the only reference to the plaintiff's poor vision on page 15 comes in a paragraph where

the ALJ stated — incorrectly — that the plaintiff never mentioned a vision problem to any of her medical providers, and the single reference on page 16 is in a recap of the plaintiff's claim. There is no discussion in the ALJ's decision beyond that — much less an "explicit and repeated" one — and certainly no reasoning in the decision as to why the vision problem should not affect the plaintiff's capacity to perform work.

The magistrate judge appears to have followed the defendant's misdirection, echoing his arguments.

There is no question that the ALJ was obliged to "consider[] all impairments — including ones that are not severe," when assessing the plaintiff's RFC. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011) (citations omitted). And he also must "explain the weight given to each physician's opinion" discussing those impairments. *Ibid.* The ALJ did not do so here, presumably because he mistakenly believed that the plaintiff had never complained previously about blurred vision to a doctor.

The ALJ's error does not require remanding the case for further consideration, however. As the Sixth Circuit has observed, "if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983). Here, there can be little question that the record supports the ALJ's RFC determination, even accounting for the plaintiff's previous complaints of blurred vision. Mathis did mention on an intermittent basis that her vision was blurred. But she also testified that she engaged in activities that required the level of visual acuity that was consistent with

the RFC finding, such as reading, doing hair, assembling jigsaw puzzles, and browsing the internet. She also denied having blurred vision during an examination on October 13, 2014, at which time her vision was reported as normal. Tr. 341, 343. And she testified that although her vision is blurry without glasses, with her glasses she said, "I see good." Tr. 39.

The plaintiff argued that jobs identified by the VE required a level of visual acuity beyond the plaintiff's capacity and inconsistent with the RFC found by the ALJ. However, although the ALJ failed to discuss the plaintiff's vision complaints when formulating the RFC, the record is clear that a non-severe vision impairment would play no role in determining the plaintiff's capacity to work. The RFC determination, therefore, was supported by substantial evidence, and the ALJ's error in overlooking medical reports in the record and failing to discuss the non-severe impairment was harmless.

The first objection will be overruled.

## Second Objection

In her second objection, the plaintiff contends that a "compelling reason" exists to reverse the ALJ's credibility determination as to the plaintiff's testimony. The plaintiff argues that had the ALJ properly credited the plaintiff's testimony that she was unable to stand and walk for most of an eight-hour workday, he would not have found that she was capable of performing light work. The plaintiff represents that the Michigan Rehabilitation Services agency determined that she was unable to be rehabilitated, and that finding, although not binding on the Commissioner's decision, is strong evidence that the plaintiff is disabled. The plaintiff argues that her work history and attempts to return to work demonstrate that she is credible, and the ALJ should have taken the rehabilitation

agency's determination into account, rather than relying solely on the plaintiff's symptoms in assessing her credibility.

Certainly, when a claimant's testimony is rejected on the ground that credibility is lacking, the ALJ is obligated to explain in some detail the reasons that led to the rejection. The Sixth Circuit explained:

> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." . . . In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

*Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 248 (6th Cir. 2007); *see also Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir.1985) ("In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.") (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

As the magistrate judge correctly observed, however, the ALJ gave reasons for his determination that the plaintiff's description of her limitations was only partially credible. The ALJ considered the plaintiff's own description of her ability to perform daily activities, and he considered the pertinent medical evidence in the record. He also gave good reasons for his disagreement with the opinion of the Michigan Rehabilitation Service and Dr. Koski. The plaintiff argues that there are sound reasons why her own account of her limitations should be accepted. And perhaps there are. But this Court may "not . . . resolve conflicting evidence in the record[,] to examine the

credibility of the claimant's testimony," *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003), "not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility," *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Instead, where, as here, the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.,* 893 F.2d 106, 108 (6th Cir. 1989).

The plaintiff's second objection will be overruled.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching his conclusion. The Court has considered all of the plaintiff's objections to the report and finds them to lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #20] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections [dkt. #21] are **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. #13] is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt #18] is **GRANTED**. The findings of the Commissioner are **AFFIRMED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 12, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 12, 2018.

        s/Susan Pinkowski
        SUSAN PINKOWSKI